## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **JOHN A. ANDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 09–02599-JAR** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF THE** | ) | |
| **SOCIAL SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM AND ORDER

On March 12, 2008, plaintiff John Anderson applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. 401 *et seq.*, and supplemental security income benefits based on disability under Title XVI of the Act, 42 U.S.C. 1381 *et seq.* His applications were denied initially and on reconsideration.[1] The Appeals Council denied plaintiff's request for review; thus, the matter is before the Court on appeal from the ALJ decision.

I.      **Standards**

Under 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."[2] This Court reviews the Commissioner's decision only to determine whether the decision was supported by substantial

---

[1]Record at 58, 68, 73.

[2]A decision under 42 U.S.C.§ 1383, for supplemental security income, is reviewable as provided in § 405(g). *See* 42 U.S.C. § 1383(c)(3).

evidence and whether the Commissioner applied the correct legal standards.[3] "Substantial

evidence is adequate relevant evidence that a reasonable mind might accept to support a

conclusion."[4] "Substantial evidence requires more than a scintilla but less than a preponderance.

The possibility of drawing two inconsistent conclusions from the evidence does not prevent an

administrative agency's findings from being supported by substantial evidence."[5] On the other

hand, "[e]vidence is not substantial if it is overwhelmed by other evidence . . . or if it really

constitutes not evidence but mere conclusion."[6] A determination of whether the ALJ's ruling is

supported by substantial evidence "must be based upon the record taken as a whole."[7] However,

"[t]he appeals court neither reweighs the evidence nor substitutes its judgment for that of the

agency."[8]

Under the Social Security Act, "disability" means the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment . . . "[9] An individual "shall be determined to be under a disability only if his physical

or mental impairment or impairments are of such severity that he is not only unable to do his

previous work but cannot, considering his age, education, and work experience, engage in any

---

[3]*Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994).

[4]*Kepler v. Chater*, 68 F.3d 387, 388–89 (10th Cir. 1995).

[5]*Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (quoting *U.S. Cellular Tel., L.L.C. v. City of Broken Arrow, Okla.*, 340 F.3d 1122, 1133 (10th Cir. 2003)).

[6]*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)).

[7]*Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).

[8]*Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

[9]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

other kind of substantial gainful work which exists in the national economy . . ."[10]

The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[11] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[12] Step one determines whether the claimant is presently engaged in substantial gainful activity.[13] If not, the decision maker continues under step two to determine whether the claimant has a medically "severe" impairment or combination of impairments.[14] The claimant must "make a threshold showing that this medically determinable impairment or combination of impairments significantly limits his ability to do basic work activities, i.e., ' the abilities and aptitudes necessary to do most jobs.'"[15] This determination is based solely on medical factors, irrespective of vocational factors such as age, education, and work experience.[16] If such a showing is made, the decision maker proceeds to step three.

At step three, the decision maker "determines whether the impairment is equivalent to one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity."[17] If the impairment meets or equals those listed, the

---

[10]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[11]*Thompson*, 987 F.2d at 1486.

[12]*Id.*

[13]*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[14]*Id.*

[15]*Id.* (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b) ((1986)).

[16]*Id.*

[17]*Id.*

claimant is disabled.  If not, the analysis proceeds to step four where the decision maker

considers whether the impairment prevents the claimant from performing work that he has

performed in the past.[18]  "At step four, an 'ALJ must evaluate a claimant's physical and mental

[residual functional capacity ("RFC")].'"[19]  The RFC represents "the most that the claimant can

still do despite her limitations, and must include all of the claimant's medically determinable

impairments."[20]  "If the claimant's RFC permits him to perform his prior work, benefits are

denied."[21]  If he is unable to perform his prior work, the analysis proceeds to step five.

At the fifth and final step, the burden shifts to the Commissioner to show that the

claimant has the RFC to perform other work in the national economy.[22]  The ALJ must determine

whether "there are sufficient jobs in the national economy for a hypothetical person with the

claimant's impairments, given his age, education, and work experience."[23]  "In posing

hypothetical questions to the [vocational expert], the ALJ is required to identify only those

physical and mental impairments borne out by the evidentiary record."[24]  If the Commissioner

cannot establish that the claimant retains the capacity "to perform an alternative work activity

and that this specific type of job exists in the national economy," the claimant is entitled to

---

[18]*Id.* (quoting *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987)).

[19]*DeWitt v. Astrue*, 381 F. App'x 782, 784 (10th Cir. 2010) (quoting *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008)); SSR 96-8p, 1996 WL 374184, at *1–*2 (July 2, 1996).

[20]*DeWitt*, 381 F. App'x at 784 (quotation marks and citations omitted).

[21]*Bowen v. City of New York*, 476 U.S. 467, 471 (1986).

[22]*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (quoting *Yuckert*, 482 U.S. at 141) (emphasis added).

[23]*Talamantes v. Astrue*, 370 F. App'x 955, 959 (10th Cir. 2010) (internal quotation marks, citations, and alterations omitted).

[24]*Id.* (citing *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996)) (alteration added).

benefits.[25]

## II.     ALJ Decision

Plaintiff was 48 years old at the time of the hearing before the ALJ in May 2009.  He completed high school and more than one year of college.[26]  In his application for disability insurance benefits and supplemental security income, plaintiff alleged an onset of disability on March 1, 2006.[27]  At the hearing, plaintiff testified that he suffered from the following ailments that contributed to his alleged disability: major depressive disorder, post-traumatic stress disorder, degenerative joint disease in the knee and shoulder, paranoia, anxiety, and hallucinations.[28]

The ALJ determined that plaintiff had not engaged in substantial gainful activity since October 1, 2007, the amended alleged onset date, and found plaintiff had the following severe impairments: major depressive disorder, post-traumatic stress disorder, and degenerative joint disease.[29]  The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled one of the listed impairments in the regulations.[30]  Furthermore, his "mental impairments, considered singly and in combination, d[id] not meet or medically equal the criteria of listings in 12.04 and 12.06."[31]  At the hearing, the ALJ posed several

---

[25]*Williams*, 844 F.2d at 751.

[26]Record at 23, 169.

[27]Record at 118, 120.

[28]Record at 28–35, 164; *see also* Record at 309–11.

[29]Record at 10.

[30]Record at 11.

[31]Record at 12.

questions to plaintiff about his exertional and nonexertional limitations. As a result of his

answers, the ALJ made the following RFC assessment:

> After careful consideration of the entire record, the undersigned
> finds that the claimant has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b) and
> 416.967(b) lifting and carrying no more than 10 pounds frequently
> and 20 pounds occasionally. He can stand or walk 6 hours and sit
> for 6 hours in an 8 hour workday with unlimited ability to
> push/pull. He can occasionally climb stairs, balance, stoop, kneel,
> and crawl. He should avoid concentrated exposure to cold. The
> claimant also should have limited contact with the general public
> and supervisors. Because of depression and loss of memory, the
> claimant is limited to simple unskilled work.[32]

From October 2007 until June 2009, plaintiff worked in various positions, including

trimmer at a meat processing plant (work considered unskilled and medium exertion), forklift

operator (considered semi-skilled and medium exertion), hide tanner (considered semi-skilled

and medium exertion), and painter for boat fabricating (considered unskilled and medium

exertion).[33] The ALJ posed two hypotheticals to the vocational expert ("VE") based on his RFC

assessment of the plaintiff. The first hypothetical consisted of the following:

> Doctor, I'd like for you now to assume for me that we have a
> hypothetical individual and that this hypothetical individual is
> between the ages of 46 and 48. Has a high school education,
> actually better than a high school education. And is capable of
> doing no more than light exertional level work lifting of [sic]
> carrying of 20 pounds occasionally, 10 pounds frequently. Can
> stand and walk six hours in eight, and sit for six hours in eight.
> Would have an unlimited ability to push and pull with extremities.
> They could only occasionally climb stairs, balance, stoop, kneel,
> crouch, or crawl. They would need to avoid concentrated exposure
> to cold. And because of loss of memory as well as a major
> depressive condition they would need to be limited to simple

---

[32]*Id.*

[33]Record at 48.

unskilled work.[34]

In response to this hypothetical, the VE concluded that the individual could not perform

plaintiff's prior work because of his or her exertional limitations, but concluded that such an

individual would be able to perform the "light, unskilled level" work of a bench assembler,

electronic assembler, and a case packer.[35]  The ALJ then posed a second hypothetical:

> Doctor, if you would, I'd like you now to assume for me a second
> hypothetical individual. . . . And I'd like for you to assume this
> hypothetical individual [under] all of the conditions that I've set
> forth in the first hypothetical.  But for the second hypothetical I'd
> [like] for you to add because of the person's problems being
> around people that he would need to have limited contact with the
> general public and supervisors.  Given that additional limitation
> can you tell me if the jobs that you just mentioned would still be
> available?[36]

The VE concluded that the same jobs would be available to the second individual in the same

quantities as under the first hypothetical.[37]

The ALJ found that plaintiff was unable to perform any past relevant work, but, after

considering his age, education, work experience, and RFC, concluded that "there are jobs that

exist in significant numbers in the national economy that the claimant can perform," that he was

not "disabled" and, thus, not entitled to benefits.[38]

Plaintiff's request for review by the Appeals Council of the Social Security

Administration was denied.  The ALJ's decision stands as the final decision of the

---

[34]Record at 48–49.

[35]Record at 49.

[36]Record at 49–50.

[37]Record at 50.

[38]Record at 16.

Commissioner.[39]

## III. Discussion

Plaintiff raises three arguments on appeal: (1) the ALJ's credibility findings and RFC were not supported by substantial evidence; (2) the ALJ erred in not properly weighing the opinions of plaintiff's treating psychiatrists; and (3) the ALJ's reliance on vocational expert's testimony is not supported by substantial evidence in the record as a whole.

### A. RFC Assessment

The RFC is what a claimant can still do despite his limitations.[40] It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities."[41] The ALJ is responsible for making an RFC finding based on all the relevant evidence in the case record and must "include consideration of the limitations caused by all of claimant's impairments, including impairments which are not 'severe' as defined in the regulations."[42] "The RFC assessment is a function-by-function assessment."[43] The adjudicator must determine "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," which means eight hours a day for

---

[39]*See Holcomb v. Astrue*, 389 F. App'x 757, 759 (10th Cir. 2010).

[40]20 C.F.R. §§ 404.1545(a), 416.945(a).

[41]SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

[42]*Jones v. Astrue*, 500 F. Supp. 2d 1277, 2182–83 (D. Kan. 2007); 20 C.F.R. §§ 404.1546(c), 416.946(c); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996).

[43]SSR 96-8p, 1996 WL 374184, at *3.

five days a week, or an equivalent work schedule.[44]  In assessing the RFC, the ALJ must

> consider physical abilities such as sitting, standing, walking,
> lifting, carrying, pushing, pulling, reaching, handling, stooping,
> and crouching; mental abilities such as understanding,
> remembering, and carrying out instructions; other abilities such as
> hearing and seeing; and the ability to tolerate various work
> environments.  *Id.*; *see also* §§ 404.1521, 416.921 (listing
> examples of basic work activities which may be affected by
> impairments).
>
> . . . "[a] limited ability to carry out certain mental activities, such
> as . . . responding appropriately to supervision, co-workers, and
> work pressures in a work setting, may reduce [a claimant's] ability
> to do [work.]"  *Id.* §§ 404.1545(c), 416.945(c). . . .
>
> . . . RFC must be expressed in terms of work-related functions.
> [citation omitted.]  In accordance with the regulations, SSR 96-8p
> states "Work-related mental activities generally required by
> competitive, remunerative work include the abilities to:
> understand, carry out, and remember instructions; use judgment in
> making work-related decisions; respond appropriately to
> supervision, co-workers and work situations; and deal with
> changes in a routine work setting." [citation omitted.][45]

In making an RFC assessment, the ALJ is to provide a narrative discussion "describing

how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory

findings) and nonmedical evidence (e.g., daily activities, observations)."[46]  The ALJ must

"discuss how the plaintiff is able to perform sustained work activities, and describe the

maximum amount of each work activity the plaintiff can perform."[47]  The RFC must address the

---

[44]*Id.* at *2 (emphasis in original).

[45]*Jones*, 500 F. Supp. 2d at 2182–83.

[46]SSR 96-8p, 1996 WL 374184, at *7.

[47]*Id.*

individual's remaining exertional and nonexertional capacities.[48]  Finally,

> [t]he discussion must include an explanation how any ambiguities
> and material inconsistencies in the evidence were considered and
> resolved.  It must include consideration of the credibility of
> plaintiff's allegations of symptoms and consideration of medical
> opinions regarding plaintiff's capabilities.  If the ALJ's RFC
> assessment conflicts with a medical source opinion, the ALJ must
> explain why he did not adopt the opinion.[49]

At the hearing, plaintiff testified in detail about his daily activities and exertional

limitations, which the ALJ relied on in making an RFC assessment.  The ALJ concluded plaintiff

had the RFC to perform "light work," lifting and carrying no more than 10 pounds frequently

and 20 pounds occasionally.[50]  The ALJ found plaintiff could "stand or walk 6 hours and sit for 6

hours in an 8 hour workday with unlimited ability to push/pull.  He can occasionally climb stairs,

balance, stoop, kneel, and crawl."  However, the ALJ found he should "avoid concentrated

exposure to cold," and maintain "limited contact with the general public and supervisors."  Due

to his depression and memory loss, the ALJ found he was limited to "simple unskilled work.[51]

Plaintiff argues various errors affected the ALJ's RFC assessment.  Specifically, plaintiff

argues: (1) the ALJ failed to properly evaluate the credibility of plaintiff's subjective complaints

about his symptoms; and (2) the ALJ failed to properly evaluate the medical opinions of

plaintiff's treating psychiatrists, Dr. Quenny Poulose and Dr. Wenifredo A. Lisondra.  The Court

considers these two arguments, and then considers whether the ALJ's RFC assessment was

supported by substantial evidence.

---

[48]*Id.* at *5.

[49]*Jones*, 500 F. Supp. 2d at 1283 (citations omitted).

[50]Record at 12.

[51]*Id.*

### 1. Evaluating Plaintiff's Credibility

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."[52]  However "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[53]  When considering a claimant's testimony regarding subjective symptoms and their effect, the ALJ must consider:

> (1) whether the Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.[54]

In the Social Security Ruling 96-7p, the Commissioner refers to this evaluation as a two-step process: the adjudicator must first (1) determine whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's symptoms; and then (2) evaluate the intensity, persistence, and functionally limiting effects of the symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities.[55]  Like step three above, in determining the credibility, the adjudicator is required to carefully consider the "entire case record."[56]

Citing to the appropriate authorities, the ALJ stated that he was considering the

---

[52]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

[53]*Id.* (internal alterations omitted).

[54]*Id.* at 390 (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)); *Jones v. Astrue*, 500 F. Supp. 2d 1277, 1288 (D. Kan. 2007).

[55]*See* SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Jones*, 500 F. Supp. 2d at 1288–89.

[56]SSR 96-7p, 1996 WL 374186, at *2.

claimant's symptoms under the "two-step process."[57]  After considering "the entire record" and "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence,"[58] the ALJ concluded that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his statements regarding the "intensity, persistence and limiting effects of these symptoms" were not fully credible.[59]

Because the ALJ found plaintiff's medically determinable impairment "could reasonably be expected to cause the alleged symptoms,"[60] he properly proceeded to consider the factors relevant to a credibility determination, comparing and contrasting plaintiff's testimony about his symptoms with the objective medical evidence.[61]  In evaluating credibility, the ALJ must consider the following factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or non-medical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of non-medical testimony with objective medical

---

[57]Record at 12.  The ALJ stated that the two-step process was "based on the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p," after considering opinion evidence "in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p."  Record at 12.

[58]Record at 12.

[59]Record at 15.

[60]*Id.*

[61]*Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (Assuming there is objective medical evidence of a pain-producing impairment, the ALJ is required "to consider her assertions of severe pain and to decide whether he believed them.") (internal quotation marks and brackets omitted) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1488 (10th Cir. 1993)); *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987).

evidence.[62]

Other factors include: "a claimant's persistent attempts to find relief for his pain and his willingness to try any treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and the possibility that psychological disorders combine with physical problems," as well as the "dosage, effectiveness, and side effects of medication."[63] The ALJ is not required to perform a "formalistic factor-by-factor recitation of the evidence" so long as he "sets forth the specific evidence he relies on in evaluating the claimant's credibility."[64]

Here, the ALJ considered many of the above factors in assessing plaintiff's credibility. He considered the effectiveness of plaintiff's medication. Plaintiff testified that medications helped control his depression[65] and reduced the auditory voices.[66] The ALJ also found the record showed medication and treatment reduced plaintiff's PTSD problems.[67]

The ALJ also compared the consistency of plaintiff's statements with the objective medical evidence. In a July 23, 2008 VA progress report, psychiatrist Queeny Poulose noted that plaintiff was alert and well-oriented; although his mood was "up and down," he had only moderate depression, paranoia and anxiety.[68] Although he had nightmares, impaired concentration, and difficulty with interpersonal relationships, he demonstrated "fair insight and

---

[62]*Kepler*, 68 F.3d at 391 (quoting *Thompson*, 987 F.2d at 1489); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (listing seven factors to be considered in evaluating subjective allegations).

[63]*Luna v. Bowen*, 834 F.2d 161, 165–66 (10th Cir. 1987).

[64]*Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

[65]Record at 13, 30.

[66]Record at 13, 32.

[67]Record at 11–13.

[68]Record at 442.

judgments" and his sleep was "better."[69]  Plaintiff was diagnosed with non-combat related PTSD

and major depression with psychosis; he was given a Global Assessment of Functioning

("GAF") score of 52, which denotes moderate symptoms or moderate difficulty in social,

occupational or school functioning.[70]

Although the ALJ did not discuss the September 25, 2008 follow-up, Dr. Poulose noted

plaintiff was "doing fair" and his nightmares were "off and on."[71]  His sleep and mood were

"fair"; his anxiety was moderate; his paranoia was mild; hallucinations were "controlled"; and he

demonstrated "fair insight and judgment."[72]  His GAF score improved to 53.[73]

The ALJ reviewed Dr. Poulose's December 23, 2008 follow-up, at which time plaintiff

stated he was "doing good."[74]  Plaintiff was alert and well-oriented with relevant and coherent

speech; he explained he gets depressed "at times," but tries to fight it and his mood is "ok."[75]  He

has anxiety over his finances, and had "occasional" nightmares and flashbacks."[76]  Plaintiff

denied hearing voices, his paranoia was "controlled," and he had "good insight and judgement

---

[69]Record at 13, 442.

[70]Record at 13, 442; *see Langley v. Barnhart*, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) ("The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.' [citation omitted]  A GAF score of 51 - 60 indicates 'moderate symptoms,' such as a flat affect, or 'moderate difficulty in social or occupational functioning.' [citation omitted]  A GAF score of 41 - 50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. [citation omitted]").

[71]Record at 423.

[72]Record at 425.

[73]*Id.*

[74]Record at 418.

[75]Record at 420.

[76]*Id.*

14

[sic]."[77] He was, at the time, searching for a job.[78] His diagnosis remained: non-combat related PTSD and major depression with psychosis.[79] He had an improved GAF score of 55.[80] When meeting with social worker Donald Rumney the same day, Mr. Rumney observed that plaintiff's affect was "euthymic" and plaintiff reported he was doing "ok."[81]

The ALJ noted plaintiff's stability and improvement over a five month period, and concluded that, "[w]hen an individual's impairment is improved by treatment or medication, then only the limitations that remain after treatment are considered for disability purposes. . . . If an impairment can be controlled by treatment or medication, it cannot be considered disabling."[82] The Tenth Circuit has noted that, when there is substantial evidence that a limitation is controlled or improved by treatment or medicine, it is appropriate to give it less weight in the RFC analysis.[83]

The ALJ's decision to give little weight to plaintiff's statements about the intensity, persistence and limiting effects of his symptoms was supported by substantial evidence in the record. "One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."[84] Although not

---

[77]*Id.*

[78]Record at 419.

[79]Record at 420.

[80]*Id.*

[81]Record at 418.

[82]Record at 13.

[83]*Cagle v. Astrue*, 266 F. App'x 788, 795–96 (10th Cir. 2008); *Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir. 1995).

[84]SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

discussed directly by the ALJ, on January 21, 2009, plaintiff was seen by social worker Marge Falcone, who noted that plaintiff was "symptom free" as it related to his hallucinations, although he tended not to talk about his voices and nightmares.[85]  The ALJ noted that, in seeking residence with Domiciliary Veteran on February 13, 2009, plaintiff indicated he was "able to work at this time," and was specifically interested in Compensated Work Training.[86]  Plaintiff also stated his medications were "helpful."[87]  He told mental health professional Patricia Durham that he was interested in pursuing the Goodwill Industries program with WorkForce and informed her that his "mood is good."[88]  Plaintiff's search for employment is well-supported by the record.[89]  The ALJ did not err in considering the consistency of plaintiff's statements with other medical signs and laboratory findings, their internal consistency, and their consistency with other information in the case record.[90]

The ALJ also noted an inconsistency between plaintiff's claims of disabling impairments and his "successful independent living."[91]  Plaintiff testified that he drives a car every day,[92] does his own grocery shopping, cooks simple meals,[93] does his laundry and his cleaning,[94] and pays

---

[85]Record at 415.

[86]Record at 393–94.

[87]Record at 394.

[88]Record at 408.

[89]Record at 281–84, 291, 293–94.

[90]*See* SSR 96-7p, 1996 WL 374186, at *5 (July 2, 1996).

[91]Record at 14.

[92]Record at 33, 212.

[93]Record at 33, 39, 206.

[94]Record at 39, 177.

his own bills.[95]  He visits friends and relatives once or twice a month and drives to St. Joseph, Missouri.[96]  In fact, plaintiff reported to doctors in July 2008 that he was experiencing pain in his lower back and right knee, yet admitted he was engaged in body building.[97]  The ALJ noted that "[t]his level of activity demonstrates a level of vigor and an ability to concentrate and interact with others which is inconsistent with the claimant's claim that he is unable to perform any work activity."[98]  Substantial evidence in the record supports these conclusions.

The ALJ observed plaintiff's conduct at the hearing.  The ALJ may consider his personal observations in his overall evaluation of plaintiff's credibility.[99]  Although plaintiff was given a brace to support his knee,[100] the ALJ noted that plaintiff was not wearing any kind of knee or shoulder brace and did not use any assistive device to ambulate.[101]  Plaintiff's testimony at the hearing also undermined his allegations of disability.  In response to the ALJ's questioning, plaintiff testified that he had the ability to pick up 25 pounds occasionally and 15 pounds repeatedly.[102]  He could climb stairs, use a ladder to change a light bulb,[103] and only "sometimes" has trouble stooping because of his knee; however, if he dropped his keys, plaintiff testified that

---

[95]Record at 212.

[96]Record at 33.

[97]Record at 11, 344–45.

[98]Record at 14.

[99]*Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000).

[100]Record at 11.

[101]Record at 14.

[102]Record at 36.

[103]Record at 36–37.

he could pick them up or get into a crawl position on the floor to search for them.[104]  He stated

that he "sometimes" has problems with his balance because he occasionally gets dizzy, but he

has not had problems for a while.[105]  He indicated some trouble with both short-term and long-

term memory, but could follow directions to get to a destination across Kansas City.[106]  Plaintiff

testified that he cleans his own apartment, and does his own cooking and laundry.[107]  Such

allegations are inconsistent with plaintiff's claims of disability based on the problems with his

knee or shoulder.  The ALJ was permitted to compare these statements with plaintiff's subjective

symptoms to evaluate his credibility.

Finally, the ALJ noted that plaintiff demonstrated motivation to seek financial support

but a lack of motivation to seek medical relief for his symptoms.  In July 24, 2008, psychology

staff noted he refused to continue to work with them after they concluded he did not have PTSD,

even though they offered therapy to address his issues.[108]  Dr. Lyman Rate noted that plaintiff

grew upset when it became apparent that Dr. Rate would not "help[] him (establish his

diagnosis) and [plaintiff] then broke off the meeting."[109]  Dr. Rate also observed that

psychological and pharmacological intervention might be effective if the plaintiff was willing to

avail himself, but noted that he appeared "significantly more eager to obtain income rather than

---

[104]Record at 37.

[105]Record at 36.

[106]Record at 38–39.

[107]Record at 39.

[108]Record at 14, 437–40.

[109]Record at 437.

relief from his behavioral difficulties."[110]  These observations are supported by the record. Plaintiff frequently expressed anxiety about his finances,[111] and, although he was seeking employment, he explained that he was pursuing Social Security Disability because he "felt he was unable to work."[112]

The ALJ concluded "neither the objective medical evidence, nor the testimony of the claimant, in addition to considering non-medical evidence, establishes that his ability to function was so severely impaired that he was precluded from working."[113]  The ALJ's credibility determination is not conclusory, but is supported by a thorough discussion of the evidence with citations to the record; furthermore, the ALJ's findings are not overwhelmed by other evidence.[114]  Having reviewed the entire record, the Court finds there is substantial evidence for the ALJ's conclusion that plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms were not entirely credible to the extent they were inconsistent with the RFC assessment.

## 2.      Evaluating Medical Opinions

Plaintiff argues the ALJ gave improper weight to the opinions of plaintiff's treating psychiatrists.  After reviewing the record, the Court concludes the ALJ did not give controlling weight to the opinions of Dr. Poulose and Dr. Lisondra that plaintiff was "disabled" because this

---

[110]Record at 438.

[111]Record at 420, 423.

[112]Record at 422–23, 428, 437–40.

[113]Record at 14.

[114]*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (quoting *Fulton v. Heckler*, 760 F.2d 1052, 1055 (10th Cir. 1985)).

conclusion was inconsistent with other treatment records and findings rendered by the doctors in their contemporaneous treatment notes, as well as other substantial evidence in the record.

This is an appropriate reason to deny controlling weight to the opinion of a treating physician. A treating source opinion may be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either respect, it is not entitled to controlling weight."[115] Furthermore, as the ALJ correctly noted, a treating physician's opinion that a patient is disabled is not dispositive.[116] Final responsibility for determining ultimate issues, such as a claimant's RFC and whether a claimant is disabled, are reserved to the Commissioner.[117] Although such opinions should not be disregarded, they are never entitled to controlling weight.[118] The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled.[119]

"Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference."[120] To determine what weight to give any medical opinion, the ALJ must consider the following specific factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing

---

[115]*Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374188, at *5 (July 2, 1996)).

[116]*Castellano v. Sec. of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994).

[117]SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996).

[118]*Id.* at *5.

[119]*See Goatcher v. U.S. Dep't of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir. 1995).

[120]*Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[121] When a treating physician's opinion is inconsistent with other medical evidence, the ALJ must examine reports of other physicians to see if they outweigh the reports of the treating physician.[122] The ALJ ultimately must weigh and resolve evidentiary conflicts, and the Court cannot reweigh the evidence.[123]

Plaintiff relies on two specific medical records. In a Medical Source Statement prepared by Dr. Lisondra on April 15, 2009, Dr. Lisondra completed a checklist, which concluded that plaintiff's mental problems would "constantly" limit his ability to make occupational and performance adjustments, as well as personal/social adjustments.[124] One July 23, 2008, Dr. Poulose prepared a one-page letter concluding that plaintiff was paranoid, had depressive episodes with "severe panic anxiety" and hallucinations; his interpersonal relationships were "poor"; his comprehension was "impaired"; and he "has phobias with crowds."[125] Both doctors concluded plaintiff was "psychiatrically disabled" and "unemployable."[126]

Plaintiff argues the ALJ failed to explain or identify any inconsistencies between these

---

[121]*Goatcher*, 52 F.3d at 290 (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

[122]*See id.*

[123]*Rutledge v. Apfel,* 230 F.3d 1172, 1174 (10th Cir. 2000); *see also White v. Barnhart,* 287 F.3d 903, 909 (10th Cir. 2001).

[124]Record at 14, 450–52.

[125]Record at 14, 443.

[126]Record at 14, 443, 453.

conclusions and the record so as to deny these opinions controlling weight. The Court disagrees. The ALJ noted the lack of support for Dr. Lisondra's conclusions. Dr. Lisondra prepared a medical source statement consisting of checked boxes. However, forms consisting of boxes checked to indicate conclusions, "standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence."[127] The ALJ observed the form questionnaire was deficient "because it does not articulate an objective medical basis for the claimant's limitations and does not correspond to the claimant's treatment notes or explain[] effects of medications."[128] As the ALJ noted, Dr. Lisondra indicated in her treatment notes that plaintiff's medications were "helpful" in addressing his symptoms. Plaintiff fails to identify any objective evidence—other than his own personal testimony, which was found to lack credibility—supporting the conclusions Dr. Lisondra reached on the checklist.[129] Without evidentiary or testimonial support, such opinions are not entitled to controlling weight.

Furthermore, the ALJ noted that Dr. Poulose's conclusions were inconsistent with his treatment notes. In a VA progress report dated July 23, 3008, Dr. Poulose noted plaintiff had only moderate depression, moderate paranoia, and moderate anxiety.[130] He was given a GAF of 52, indicating moderate symptoms or moderate difficulty in social, occupational or school functioning. He had impaired concentration and difficulty with interpersonal relationships, but

---

[127]*Williams v. Bowen*, 844 F.2d 748, 757 (10th Cir. 1988).

[128]Record at 15.

[129]*See* SSR 96-2p, 1996 WL 374188, at *2 (July 2, 1996) ("The adjudicator must find that the treating source's medical opinion is 'well-supported' by 'medically acceptable' clinical and laboratory diagnostic techniques. The adjudicator cannot decide a case in reliance on a medical opinion without some reasonable support for the opinion.").

[130]Record at 442.

demonstrated "fair insight and judgments" and his sleep was "better."[131]  The same day, Dr. Poulose prepared a one-page letter, which was inconsistent with his treatment note.  He indicated plaintiff had "severe panic anxiety," his interpersonal relationships are "poor," his comprehension is "impaired," and that "medications and therapies have limited beneficial effect."[132]  At a follow-up appointment on September 25, 2008, Dr. Poulose noted improvement.  His records indicate plaintiff was "doing fair" and his nightmares were "off and on."[133]  His sleep and mood were "fair"; his anxiety was "moderate"; his paranoia was "mild"; hallucinations were "controlled"; and he demonstrated "fair insight and judgment."[134]  He had a GAF score of 53.[135]  Dr. Poulose's letter indicated far more severe symptoms than those recorded in his treatment notes.  Having alluded to these inconsistencies in reaching his RFC assessment, the ALJ gave sufficiently specific, legitimate reasons for not giving controlling weight to Dr. Poulose's conclusion that plaintiff was "disabled" and "unemployable."

In giving these opinions "little weight," the ALJ noted the length of the treatment relationship between the doctors and plaintiff.  Dr. Lisondra and Dr. Poulose had only been treating plaintiff "since February 5, 2008."[136]  In fact, plaintiff indicated at the hearing on June 14, 2009 that Dr. Lisondra took over for Dr. Poulose and began treating him as late as January

---

[131]Record at 13, 442.

[132]Record at 443.

[133]Record at 423.

[134]Record at 425.

[135]*Id.*

[136]Record at 15.

2009.[137]

Contrary to plaintiff's assertion, the ALJ did not entirely disregard the opinions and findings of plaintiff's treating psychiatrists. He gave significant weight to their observations recorded in their contemporaneous treatment records, which were consistent with other substantial evidence in the record. Plaintiff visited social worker Donald Rumney about as often as he saw other healthcare providers at Leavenworth.[138] On December 23, 2008, Mr. Rumney observed that plaintiff's "affect [was] euthymic," that he reported "doing ok" and, while he admitted "being down," "he now decided to do best he can."[139] In fact, physician Richard Sloan interviewed plaintiff upon his discharge in August 2008 and found him "sociable."[140] On January 21, 2009, plaintiff informed social worker Marge Falcone that he was "symptom free" as it related to his hallucinations.[141]

For many of the same reasons the ALJ found plaintiff's subjective symptoms were not credible, the ALJ found there was substantial evidence that did not support "the doctor's opinions regarding the claimant's ability to work."[142] SSR 96-2p directs that "a treating source's medical opinion on what an individual can still do despite his or her impairment(s) will not be entitled to controlling weight if substantial, nonmedical evidence shows that the individual's

---

[137]Record at 45.

[138]Record at 46.

[139]Record at 418.

[140]Record at 434 (physician Richard Sloan's observation in the August 4, 2008 discharge note).

[141]Record at 415.

[142]Record at 15.

actual activities are greater than those provided in the treating source's opinion."[143]

After considering various factors listed above, the ALJ's decision to give "little weight" to plaintiff's treating psychiatrists on the issue of disability was supported by substantial evidence. The ALJ appropriately did not give controlling weight to treating psychiatrists Dr. Poulose and Dr. Lisondra's opinions regarding plaintiff's "ability to work" because, as the ALJ noted, they were not supported by "well documented medical evidence, treatment records or statements of the claimant regarding his daily activities and physical abilities."[144] Such opinions were inconsistent with their own contemporaneous treatment notes and not supported by substantial evidence in the record.

### 3. The RFC was Supported by Substantial Evidence

Plaintiff argues there are multiple errors in the ALJ's final RFC assessment: the ALJ erred in finding his symptoms from his mental impairments were not as limiting as alleged; failed to adequately consider evidence of plaintiff's physical impairments; failed to consider the "combined effect" of his impairments; gave "no weight" to his treating psychiatrists; and gave improper weight to his ability to perform daily activities. Although there is evidence plaintiff was able to obtain employment, plaintiff argues there was evidence he was unable to maintain it; and the ALJ failed to consider the side-effects of plaintiff's medication.

As discussed in the previous section, the ALJ properly considered plaintiff's ability to perform daily activities when evaluating plaintiff's credibility, properly considered the degree of exertional limitations acknowledged by plaintiff in his testimony, and properly evaluated the

---

[143]SSR 96-2p, 1996 WL 3741988, at *4 (July 2, 1996).

[144]Record at 15.

weight to be given to the opinions of plaintiff's treating psychiatrists.[145]  Plaintiff argues there is evidence he was able to secure employment, but was not able to maintain it.[146]  However, such an observation is not evidence of a medically determinable physical or mental impairment, or evidence that plaintiff is unable to engage in *any* substantial gainful activity.[147]  This Court does not reweigh the evidence or substitute its own judgment for that of the agency.[148]

Next, plaintiff argues the ALJ failed to consider the combined effect of his physical and mental impairments in determining his RFC.  Unless the decision maker considers all of claimant's impairments, both singly and in combination, the decision is not supported by substantial evidence.[149]  Here, the ALJ clearly considered plaintiff's impairments, both physical and mental.  In evaluating plaintiff's mental impairments under 20 CFR Part 404, Subpart P, Appendix 1, the ALJ previously noted that plaintiff

> lives by himself and is able to drive his car in search of employment and other activities of daily living.  He has responded well to substance abuse treatment programs and his depression, nightmares, and paranoia are better controlled.  He has never undergone hospitalization for mental problems.[150]

---

[145]SSR 96-8p, 1996 WL 374184, at *7–*8 n.8 (July 2, 1996) ("A medical source opinion that an individual is 'disabled' or 'unable to work,' has an impairment(s) that meets or is equivalent in severity to the requirements of a listing, has a particular RFC, or that concerns the application of vocational factors, is an opinion on an issue reserved to the Commissioner.  Every such opinion must still be considered in adjudicating a disability claim; however, the adjudicator will not give any special significance to the opinion because of its source.").

[146]Record at 296 (noting in an April 8, 2008 evaluation that his impairments created a "substantial impediment to employment in the areas of interpersonal and work skills"); *id.* at 338 (noting in a July 23, 2008 social work note that he has as history of "being able to obtain employment but not being able to hold it").

[147]*See* 42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A) (defining "disability" under the Social Security Act).

[148]*Decker v. Chater*, 86 F.3d 953, 954 (10th Cir. 1996).

[149]*Hawkins v. Heckler*, 600 F. Supp. 832, 837 (D. Kan. 1985); *Nelson v. Comm'r of Soc. Sec. Admin.*, 252 F. Supp. 2d 1148, 1163 (D. Kan. 2003).

[150]Record at 12.

A psychiatric review was conducted by Dr. Norman Jessop on July 16, 2008, finding that plaintiff's depression and alcohol dependence had only a mild impact on his activities of daily living, social functioning, and concentration, persistence or pace; there were no previous episodes of decompensation; and his impairments were "[n]ot [s]evere."[151]  The ALJ incorporated plaintiff's mental impairments, whether severe or not, and his nonexertional capacity into his final RFC assessment.  He found plaintiff "should avoid concentrated exposure to cold" and should have "limited contact with the general public and supervisors."[152]  The ALJ concluded, "[b]ecause of depression and loss of memory," his was limited to "simple unskilled work."[153]

Plaintiff also argues the ALJ's RFC did not consider the extent of his physical limitations, or adequately consider, specifically, the degenerative osteoarthritis in his right knee and left shoulder.  But a severe impairment is one having more than a minimal effect on a claimant's ability to do basic work activities;[154] while an RFC limitation includes "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."[155]  Therefore, an ALJ may find that an impairment has more than a minimal effect on plaintiff's work abilities, yet would not impair plaintiff from

[151]Record at 318– 31.

[152]Record at 12.

[153]*Id.*; *see* SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996) (noting that "nonexertional capacity" includes an assessment of "an individual's abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision).  In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).").

[154]*Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

[155]SSR 96-8p, 1996 WL 374184, at *2.

performing sustained work-related activities on a regular and continuing basis.  Even after

plaintiff testified he was able to lift 25 pounds occasionally and 15 pounds frequently,[156] the ALJ

concluded that, in light of his impairments, he was only able to lift 20 pounds occasionally and

10 pounds frequently.[157]  "RFC does not represent the *least* an individual can do despite his or

her limitations or restrictions, but the *most*."[158]  This downward adjustment demonstrates the

ALJ's awareness of plaintiff's physical limitations.

Furthermore, the ALJ's assessment of plaintiff's physical and mental ability to perform

other work-related activities largely corresponded to plaintiff's testimony at the hearing.[159]  The

ALJ asked plaintiff a series of questions relating to his exertional and nonexertional limitations.

Plaintiff testified that he could "pick up and put down on the floor" 25 pounds; and he could lift

and lower 15 pounds "repeatedly throughout the day."[160]  He stated that he "sometimes" has

problems with his balance because he occasionally gets dizzy.[161]  He is able to climb stairs and

use a ladder to change a light bulb.[162]  He "sometimes" has trouble stooping to the floor because

his knees lock up when he "twist[s]," but if he dropped his keys on the floor, he could pick them

up.[163]  He testified that, if he could not find his keys, he could get into a crawl position on the

---

[156]Record at 11, 36.

[157]Record at 12.

[158]SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original).

[159]*Compare* Record at 12 *with* Record at 36–40.

[160]Record at 36.

[161]*Id.*

[162]Record at 36–37.

[163]Record at 37.

floor to search for them, and is able to "reach out and grab things."[164] He is able to hold things, such as a cup of coffee or a can of soda, and can use small items such as a pen or pencil.[165] He uses the computer "very little."[166] He is able to read.[167] Plaintiff indicated that he struggles with cold temperatures, but has no problems with heat, vibrations, fumes or odors.[168] He indicated that he has difficulty with both short-term and long-term memory, but could follow directions to get to a particular destination.[169] He watches television and can sit through an entire movie.[170] Plaintiff testified that he cleans his own apartment, and does his own cooking and laundry.[171] Plaintiff's attorney asked additional questions and plaintiff testified that he has bad dreams "[e]very other night,"[172] has flashbacks while he is at home "every two weeks,"[173] and has hallucinations "every other night" when he is trying to sleep.[174] Plaintiff testified he experiences paranoia and panic attacks when he is around a group of people.[175]

The record also includes a Psychiatric Review Technique completed by Dr. Norman

---

[164]*Id.*

[165]*Id.*

[166]*Id.*

[167]Record at 37–38.

[168]Record at 38.

[169]Record at 38–39.

[170]Record at 39.

[171]*Id.*

[172]Record at 41.

[173]Record at 42.

[174]Record at 43.

[175]Record at 43–44.

Jessop, in which Dr. Jessop found plaintiff's depression and alcohol dependence were not "severe" impairments and only placed mild limits on plaintiff's activities of daily living, social functioning, and concentration, persistence, or pace.[176]  The ALJ also concluded these presented only mild difficulties for plaintiff, but found plaintiff had "moderate" difficulty with concentration, persistence, or pace.[177]

Finally, the record includes a Physical Residual Functional Capacity Assessment completed by Tara L. Fey, which incorporated a discussion of plaintiff's physical impairments.[178]  She concluded that plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk six hours and sit six hours in an eight-hour day; and he had unlimited ability to push and/or pull, other than as affected by his ability to lift and/or carry.[179]  He only occasionally had trouble with climbing stairs or ladders, balancing, stooping, kneeling, crouching, and crawling.[180]  She concluded he had no apparent manipulative, visual, communicative, or environmental limitations.[181]  Based on plaintiff's testimony, however, the ALJ concluded that he needed to avoid "concentrated exposure to cold," and maintain "limited contact with the general public and supervisors."[182]  Furthermore, the ALJ recognized

---

[176]Record at 328.

[177]Record at 12.

[178]Record at 234–42.

[179]Record at 235.

[180]Record at 236.

[181]Record at 237–38.

[182]Record at 12.

that plaintiff faced limitations based on his depression and memory loss.[183]  The ALJ considered the "entire record" and assessed an RFC that was, in fact, more limited than that to which plaintiff testified at the hearing.

Plaintiff argues the ALJ failed to consider the side-effects of plaintiff's medications.  To whatever extent plaintiff believes his medication caused side-effects, he does not point to any evidence in the doctors' treatment notes that these problems were ongoing.  On May 5, 2008, he informed Dr. Poulose that the Risperidone and Quetiapine he was taking caused him to become "jittery," and these medicines were discontinued.  He was instead prescribed Mirtazepine, Bupropion, and Abilify.[184]  Dr. Poulose directed him to call the clinic if he had side effects.[185]  No ongoing problems were recorded in the medical records.  To the extent, plaintiff believes these alleged side effects preclude him from performing work-related activities, as discussed above, the ALJ properly evaluated plaintiff's credibility and was entitled to give less weight to his subjective complaints.

An RFC assessment is an ultimate issue reserved to the Commissioner.[186]  Where the ALJ states he has considered the "entire record," the appellate Court is to "take [him] at [his] word."[187]  After reviewing the entire record, this Court finds the ALJ's RFC assessment was supported by substantial evidence in this case.

## B.     Vocational Expert's Testimony

---

[183]*Id.*

[184]Record at 275–78.

[185]Record at 277.

[186]SSR 96-5P, 1996 WL 374183, at *2 (July 2, 1996).

[187]*Wall v. Astrue*, 561 F.3d 1048, 1069 (10th Cir. 2009).

Based on his arguments that the ALJ erred in his determination of the credibility of plaintiff's subjective complaints, erred in discrediting the opinions of the treating physicians, and otherwise erred in determining his RFC, plaintiff challenges the accuracy of the hypothetical questions the ALJ posed to the vocational expert. Hypothetical questions must generally "reflect with precision all of [plaintiff's] impairments," however, "they need only reflect impairments and limitations that are borne out by the evidentiary record."[188] Thus, when the ALJ makes credibility determinations that are supported by substantial evidence, those findings may be accurately reflected in the ALJ's hypothetical inquiries.[189]

The ALJ ultimately must weigh and resolve evidentiary conflicts, and the Court cannot reweigh the evidence.[190] Because the Court concludes that the ALJ properly weighed and resolved evidentiary conflicts, the Court further concludes that the hypothetical questions were properly supported by substantial evidence. Thus the vocational expert's testimony provided substantial evidence that there were a significant number of simple unskilled jobs in the local and national economies which plaintiff could perform.

**IT IS THEREFORE ORDERED** that the Commissioner's decision be and hereby is **AFFIRMED**. The Clerk shall enter judgment pursuant to the fourth sentence of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

Dated: January 14, 2011

S/ Julie A. Robinson

---

[188]*Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

[189]*See id.*

[190]*Rutledge v. Apfel,* 230 F.3d 1172, 1174 (10th Cir. 2000); *see also White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (stating that court will not second-guess the ALJ decision).

JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE